129-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ORIGINAL

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

QUINCY DESHAN BUTLER,
Petitioner,

vs.

THE STATE OF TEXAS,
Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PETITIONER'S "PETITION FOR DISCRETIONARY REVIEW"

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CASE NUMBER #10-13-00430-CR

TRIAL COURT NUMBER #12-00472-CRF-272

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Quincy Deshan Butler
c/o TDCJ-ID #1899541
Allred Unit, 2101 FM 369 N.
Iowa Park, Texas 76367

(pro se litigant)

**FILED IN**
COURT OF CRIMINAL APPEALS

FEB 20 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 17 2015

Abel Acosta, Clerk

(i)

IDENTITY OF THE PARTIES


CASE NUMBER #10-13-00430-CR


QUINCY DESHAN BUTLER,
Petitioner,

vs.

THE STATE OF TEXAS
Respondent.


QUINCY DESHAN BUTLER (is proceeding in a pro se manner with PDR)
c/o TDCJ-ID #1899541
Allred Unit, 2101 FM 369 N.
Iowa Park, Texas 76367

THE STATE OF TEXAS is represented by the following:

Mr. Kyle Hawthorne
4343 Carter Creek Hiway, Ste. 100
Bryan, Texas 77803
(khawthorne@bruchez.com.)

Mr. Jason B. Goss
Asst. Distorney
300 East 26th Street
Bryan, Texas 77803

Mr. Ryan C. Calvert
Asst. District Attorney
300 East 26th Street
Bryan, Texas 77803


Honorable Judge Travis Bryan, III
300 East 26th Street
Bryan, Texas 77803


APPELLATE COUNSEL FOR PETITIONER IS:

Ms. Mary Jo Holloway
10222 Old Stagecoach
Chappell Hill, Texas 77833


(ii)

# TABLE OF CONTENTS

COVER PAGE                                           i

IDENTITY OF PARTIES                                  ii

TABLE OF CONTENTS                                    iii

INDEX OF AUTHORITIES                                 iv, v

STATEMENT OF THE CASE                                vi

STATEMENT OF JURISDICTION                            vii, viii

ISSUES PRESENTED FOR REVIEW                          ix

STATEMENT OF FACTS                                   x, xi

### ARGUMENTS & AUTHORITIES OF ISSUES IN QUESTION

ISSUE #1                                             pg.  1

ISSUE #2                                             pg.  2

ISSUE #3                                             pg.  4

ISSUE #4                                             pg.  6

ISSUE #5                                             pg. 13


PRAYER FOR RELIEF                                    pg. 15

UNSWORN DECLARATION                                  pg. 15

INDEX OF AUTHORITIES

**CASES**

TEXAS COURTS: 2d & 3d:

ALONZO vs. STATE, 353 S.W.3d 78                                          pg. 1
ALVARADO vs. STATE, 704 S.W.2d 36                                        pg. 1
BROWN vs. STATE, 122 S.W.3d 794                                          pg. 9
CLEWIS vs. STATE, 922 S.W.2d 126                                         pg. 4
CORONADO vs. STATE, 351 S.W.3d 315                                       pg. 9
CORTEZ vs. STATE, 683 S.W.2d 419                                         pg. 6
FERGUSON vs. STATE, 622 S.W.2d 846                                       pg. 13
HAMMER vs. STATE, 296 S.W.3d 555                                         pg. 13
JACKSON vs. STATE, 482 S.W.2d 864                                        pg. 13
KELLER vs. WILSON, 168 S.W.3d 802                                        pg. 3
KESTERSON vs. TEXAS, 997 S.W.2d 290                                      pg. 7
KOEHLER vs. state, 679 S.W.2d 6                                          pg. 12
MERRELL DOW PHARMS., INC. vs. HAVENER, 953 S.W.2d 706                    pg. 3
POLLARD vs. STATE, 255 S.W.3d 184                                        pg. 13
RICHARDSON vs. STATE, 257 S.W.2d 308                                     pg. 6
SAGLIMBENI vs. STATE, 100 S.W.3d 429                                     pg. 12
SANSOM vs. STATE, 292 S.W.3d 112                                         pg. 12
THOMAS vs. STATE, 621 S.W.2d 158                                         pg. 13
VIRTS vs. STATE, 739 S.W.2d 25                                           pg. 12
WILLIS vs. SATTE, 790 S.W.2d 307                                         pg. 1


**FEDERAL 2d & 3d:**

BIGLEY vs. DRETKE, 402 F.3d 551                                          pg. 9
U.S. vs. DIAZ, 637 F.3d 592                                              pg. 9
U.S. vs. SANCHEZ, 961 F.2d 1169                                          pg. 3
U.S. vs. WILCOX, 631 F.3d 740                                            pg. 9


**U.S. SUPREME COURT:**

DELAWARE vs. VAN ARSDALL, 475 U.S. 673                                   pg. 7
DOUGLAS vs. ALABAMA, 85 S.Ct. 1074                                       pg. 7
CHAMBERS vs. MISSISSIPPI, 93 S.Ct. 1038                             pg. 10, 11
IN RE WINSHIP, 90 S.Ct. 1068                                            pg. 4
MATTOX vs. U.S., 15 S.Ct. 337                                            pg. 7
U.S. vs. APFELBUAN, 100 S.Ct. 948                                       pg. 7
U.S. vs. MANDUJUANO, 96 S.Ct. 1768                                      pg. 7
U.S. vs. MANCHIK, 106 S.Ct. 938                                         pg. 2
U.S. vs. WONG, 97 S.Ct. 1823                                            pg. 7
WILLIAMS vs. TAYLOR, 120 S.Ct. 1495                                     pg. 4


**RULES & OTHER RESOURCES:**

U.S. CONST. AMEND. 1                                                    pg. 13
U.S. CONST. AMEND. 4                                                    pg. 13
U.S. CONST. AMEND. 6                                                 1, 7, 12, 13
U.S. CONST. AMEND. 14                                               pg. 12, 13

TEX. CONST. article I, §10                                              pg. 6

TEX. PENAL CODES, §22.05                                pg. 1
TEX. PENAL CODE, §46.04                                 pg. 1
TEX. PENAL CODE, §6.01(a)                               pg. 1

TEX. CODE CRIM. PROC., article 1.05                     pg. 7

TEX. GOV'T CODE, §22.001(a)(6)                          pg. 1

TEX.RULE APPELLATE PROC., rule 44.2(a)               1, 6, 11

YOUNGER "CONFRONTEATION, 24 Washburn L.J. 1, 28         pg. 9

## STATEMENT OF THE CASE

**NATURE OF THE CASE:** The Petitioner was arrested and indicted for the alleged criminal offenses of "DEADLY CONDUCT," and "UNLAWFUL POSSESSION OF A FIRE ARM BY A FELON," pursuant to Texas Penal Code sections §22.05 (Deadly Conduct) and §46.04 (Unlawful possession of a Firearm by a Felon), under indictment number #12-00472-CRF-272, in the County of Brazos, Texas.

**PROCEEDINGS IN THE TRIAL COURT:** The trial court during the First trial "declared a mistrial" and on the 2nd day of May, 2013, the 10th Court of Appeals of Texas reversed the trial courts decision. Also, the trial court on the 17th-18th day of September, 2013 had declared yet another "mistrial," with the State requesting that all of their exhibits be withdrawn for preparation of the third trial. And, the third trial began on the 20th day of October, 2013 where the Petitioner was found guilty of Count One of the Indictment, "DEADLY CONDUCT," with a deadly weapon, and the jury set punishment at "Sixty-two" (62) years incarceration within the confinement of the Texas Department of Criminal Justice-Institutions Division.

**PROCEEDINGS IN THE APPEALS COURT:** On the 8th day of January, 2015, the 10th Court of Appeals of Texas, "AFFIRMED" the judgment of the trial court, after Petitioner, through appellate counsel filing his direct appeal on the 14th day of July, 2014 after providing proper and timely notice of appeal. The Honorable Justices: Chief Justice Gray, Justice Davis, and Justice Scoggins rendered the opinion AND judgment on the issues raised by the Peititioner.

## STATEMENT OF JURISDICTION

The Court of Criminal Appeals of Texas has jurisdiction over this appeal, and petitioner's "Petition for Discretionary review" because the 10th Court of Appeals of Texas has committed an error of law of such importance to the state's jurisprudence that it would be unconstitutional should it not be corrected. [Texas Government Code, §22.001(a)(6)].

In it's decision to deny relief of Petitioner's issues in regards to trial court error, the 10th Court of Appeals of Texas failed to make an appropriate analysis of the State's alleged specific allegations of manner and means of the offense in order to bar subsequent prosecution for the same offense and to give the petitioner precise notice of the offense in which he is being charged.

The court appeals failed to attribute the verdict to "bias, irrationality or to some other peculiarity where the jury's verdict is clearly wrong and manifestly unjust" as to the petitioner's allegation of the "insufficiency of the evidence" because of the defective indictment of issue number one.

The appellate court failed to properly review and decide petitioner's issue number three, when it affirmed the trial court's judgment and not remand for further proceedings because the trial court committed error in denying Defendant's Motion to Dismiss in accordance to the facts and indictment's failure to provide adequate notice of what the petitioner was to defend during trial.

The court further denied petitioner his right to a "fair and meaningful appellate hearing process" when the court failed to properly evaluate trial error and prosecutorial misconduct in denying petitioner his right to Sixth Amendment Confrontation right, by alleging intended fowl play of threatening the life, health and safety of the state's star witness without providing any proof or witnesses of such claim to and for the purpose of "limiting petitioner to his right to cross-examine the state's star witness." And for prosecutorial misconduct of violating the BRADY doctrine when failing to provide the defense with notice of such denial of supporting evidence to effectively impeach the state's star witness.

Appellate court failed to view and apply issue Five to the appropriate standard of weighing the probative value of the evidence which had no possible supporting

weight to the sufficiency of the evidence to guilt or innocence to the charge alleged in Count Two of the indictment; which was frivolous and misleading to the fact finders, and was produced and used by the state for the sole purpose of incriminating, prejudicing and harming the defense.

**ISSUE #1:** DID THE DECISION OF THE TRIAL JUDGE TO DENY PETITIONER'S MOTION TO QUASH THE INDICTMENT DEPRIVE PETITIONER OF HIS RIGHT'S AS SECURED AND GUARANTEED UNDER THE SIXTH AMENDMENT TO "AN IMPARTIAL JURY" TRIAL; AND TO BE PROPERLY INFORMED OF THE "NATURE AND CAUSE OF THE ACCUSATIONS" AGAINST HIM...?

**ISSUE #2:** WAS PETITIONER'S "DUE PROCESS & EQUAL PROTECTION OF THE LAWS" RIGHTS VIOLATED WHEN THE TRIAL COURT ALLOWED EVIDENCE "ILLEGALLY INSUFFICIENT" TO BE ENTERED INTO THE TRIAL, LESSENING THE STATES BURDEN TO PROVE "BEYOND A REASONABLE DOUBT" EVERY ELEMENT OF THE OFFENSE CHARGED IN THE INDICTMENT?

**ISSUE #3:** DID JUSTICE AL SCOGGINS, DECISION FOR THE TENTH COURT OF APPEALS OF TEXAS, VIOLATE "WELL ESTABLISHED FEDERAL LAW, AS ESTABLISHED BY THE U.S. SUPREME COURT, WHEN THE DECISION WAS 'CONTRARY TO, OR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT" WHEN "AFFIRMING THE TRIAL COURTS DENYING PETITIONER'S MOTION FOR MISTRIAL?"

**ISSUE #4:** WAS PETITIONER'S SIXTH AMENDMENT RIGHT VIOLATED WHEN THE TRIAL COURT RESTRICTED "CROSS-EXAMINATION" OF THE COMPLAINING WITNESS REGARDING HIS "PAST DISHONESTY AND BEING A LONG TIME CONFIDENTIAL INFORMANT," WHEN THE STATE ALLEGED THE SAFETY & HEALTH OF THE WITNESS, CREATING A FALSE "IMPRESSION" OF PETITIONER'S CHARACTER BEFORE THE JURY WITHOUT PRESENTING EVIDENCE, WITNESSES OR ANY OTHER SUPPORTING FACTS TO SUBSTANTIATE THE NEED TO PLACE SUCH LIMITATIONS ON THE DEFENSES CROSS-EXAMINATION OF THE STATES STAR WITNESS?

**ISSUE #5:** WAS PETITIONER'S SECURED AND GUARANTEED DUE PROCESS RIGHTS PROTECTED WHEN THE TRIAL COURT ALLOWED THE STATE TO PRESENT EXTRANEOUS OFFENSES AND IRRELEVANT FACTS TO SHOW THAT PETITIONER WAS A "CRIMINAL OR BAD CHARACTER IN GENERAL?"

## STATEMENT OF FACTS

The opinion of the court of appeals correctly states the nature of the case. The Court, however, omitted some facts relied on by the petitioner. Thus, the petitioner presents this his summary of facts omitted from the court's opinion.

Petitioner challenged the constitutional test required for a valid indictment, and the elements of the offense and every fact or circumstance necessary to complete the description thereof alleged therein the charging indictment; and the trial courts denying the Motion to Quash the Indictment as the Texas Code of Criminal Procedures illustratively defines defects in substance to include "That it contains matter which is a legal defense or bar to prosecution." And the terms set forth in the second paragraph charging Petitioner with a conduct of being reckless is misconstrued, impermissible or misdirected to the meaning expressly provided by Texas Legislature of "intent" in the instant case, thus, reveals constitutional error that is subject to a harmless error review, and the court of appeals should have reversed the judgment of conviction, and remanded back to trial court.

Further, the challenge to the legally insufficient evidence should have been reviewed "de novo." In accordance to "well established federal law, established by the U.S. Supreme Court," as well as the Texas Court of Criminal Appeals, a grand jury indictment must set forth each essential element of an offense, and to be valid, an indictment must charge positively and not inferentlly everything essential with clarity and certainty so that the accused may know with precise notice of what he is defending against. In the instant case matter, the trial court had twice prior to the instant case, dismissed the charges/indictment for reasons of the defects in the indictment. Because of the indictment failing to set forth with specific allegations of the manner and means of which he was to prepare a defense, the evidence presented in regards to the second paragraph is absent of vital facts and is no more than a scintilla of mere suspicion of the facts that exists of the opposite set of facts.

The trial court's denial of dismissal of the case in Petitioner's Motion to Mistrial, violated well "established law, as decided by the U.S. Supreme Court," when it's decision to deny motion was "objectively unreasonable" when such a necessity existed or the ends of public justice would otherwise be defeated, and that the trial court failed to consider alternatives before denying Petitioner's motion for mistrial.

Petitioner was denied his right to the Sixth Amendment Clause of "Confrontation" which confers upon the accused "in all criminal prosecutions...the right...to be confronted with witnesses against him." And because of prosecutorial misconduct by the state's attorney, Petitioner was deprived of this right which had the fact finders, the jurors, in this case been given an opportunity to hear and evaluate the trustworthiness of the state's star witness, and the defense been provided a fair warning by the state's attorney of the states inttention to seal and prevent the defense from properly cross-examining the star witness, then the defense would have been prepared to argue and present caselaw in support of a defense against the states alleged incident of the witness being in danger of health and security because of an alleged incident in which the transcripts of the witness providing information against the petitioner and other persons for a lesser crime/punishment or the dismissal of pending criminal charges. The defense could have also interviewed the alleged persons whom the transcripts were provided and called them as witnesses for the defense in rebut of the state's attorney in his allegations of the safety and security of the witness, and the **no evidence the states attorney failed to provide in support of sealing and refusing the defense to cross-examine** its star witness.

Petitioner was denied a fair and impartial hearing tribune when the trial court allowed the state to introduce and admit evidence of irrelevant evidence into the trial for the consideration of the fact finders for the purpose of nothing more than to show "bad character and a means of guilt" without providing evidence and proof of said alleged facts. Irregardless of whether petitioner may have or may not have committed any criminal act as is alleged in the indictment, no evidence was provided or proved beyond a reasonable doubt that Petitioner had committed any serious bodily injury as testified during trial, because: (1) no actual witness saw and testified that it was in deed and fact the petitioner who own and operated the alleged weapon which was the cause and intentional injurys of the alleged victim, Ms. Pinky Hardy; and (2) no actual scientific forensic tests results showed or proved beyond a reasonable doubt that the weapon used in the alleged crime was the same as the one owned and in possession of the petitioner. Furthermore, no evidence was provided that petitioner gave chase because he was guilty of the crimes in the defective indictment. In fact, evidence existed that rebutted the states claims of guilt, when evidence of drugs and other crimes were found in petitioners car after the chase, and of prior criminal conduct. Therefore, the trial court was in error and petitioner wrongfully convicted without proof of guilt except for the states admitting irrelevant evidence of guilt.

**ISSUE #1:** DID THE DECISION OF THE TRIAL JUDGE TO DENY PETITIONER'S MOTION TO QUASH THE INDICTMENT DEPRIVE PETITIONER OF HIS RIGHTS AS SECURED AND GUARANTEED UNDER THE SIXTH AMENDMENT TO "AN IMPARTIAL JURY" TRIAL; AND TO BE PROPERLY INFORMED OF THE "NATURE AND CAUSE OF THE ACCUSATIONS" AGAINST HIM...?

Since Petitioner is raising a Constitutional error, the standard of review is "(a) If the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." [Tex.R.App. Pro., rule 44.2(a)]. The U.S. Constitution states that: "In all criminal prosecutions, the accused shall enjoy the right to a...public trial, by an impartial jury....and to be informed of the nature and cause of the accusation...". [U.S. Consti., amend. 6].

In the instant case, the Petitioner was entitled to a specific allegation of the manner and means of committing the alleged offense in which he was charged. In the instant indictment, the state alleged in a two count indictment alleged various means in which petitioner allegedly committed the alleged criminal offense. Thus, failing to provide certain and precise notice of the offense with which he was being charged so that he may prepare an effective defense against those charges. The state alleged that petitioner acted with specific intent of kknowingly," then also charged that he acted "recklessly."

This court in many cases has held that an accused cannot act "intentionally or knowingly," and act in a "reckless" manner at the same time in the same instant. [ALONZO vs. STATE, 353 S.W.3d 778 (Tex.Crim.App.2011); WILLIS vs. STATE, 790 S.W.2d 307, 313-15 (Tex.Crim.App.1990)]. This Court further held in ALVARADO vs. STATE, 704 S.W.2d 36, 38 (Tex.Crim.App.1985)], that the "significant aspect of Texas Penal Code, §601(a) is that it "distinquishes culpable mental states from the requirements of voluntary act or omission to a predicate criminal responsibility."

During his direct appeal, Petitioner challenged the sufficiency of the indictment as to the trial judge's dismissal of his motion to quash the indictment through his timely and required "objections." twice prior to the trial in this matter, petitioner presented facts of the very indictment being defective and without proper substance as to properly provide notice to the accused as to what he was

being charged with so that he could effectively prepare for trial.

The element in question is "the two separate manner and means theories" of charging petitioner with a crime, which violates the "DOUBLE JEOPARDY CLAUSE" of both the Texas and United States Constitutions, when the state alleged in Count One that petitioner committed an offense of DEADLY CONDUCT by "knowingly discharge a firearm..." and "did then and there use or exhibit a deadly weapon ...capable of causing death or serious bodily injury"....And in paragragph two alleged that the petitioner acted both knowingly and reckless...discharged the firearm ata habitation. Then in Count Two, alleged that petitioner "intentionally and knowingly possessed a firearm," after being convicted of an unrelated felony charge, and went on to allege in violation of the DOUBLE JEOPARDY CLAUSE, that petitioner "did then and there use or exhibit a deadly weapon, to-wit: a firearm." Thus, alleging the same facts and individuals as victims to this illegal charge.

The U.S. Supreme Court has determined that once a "trial takes place...there is little a court of appeals can do to restore to a defendant that which was lost; the right not to face a prosecution intiated solely at the state's behest." [U.S. vs. MECHANIK, 475 U.S. 66, 71, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)]. The trial court, as well as the court of appeals in this matter failed to engage in testing the charging instrument in regards to whether it provided the proper adequate notice to the accused. Neither the trial court nor the appellate court identified the elements of the offense in which petitioner was charged providing proper and adequate notice, which include: the forbidden conduct; the required culpability, if any; any result; and the negation of the offense. And secondly, neither court applied the test for an alternative manner and means in which the charging instrument must allege with specifically manner and means of the commission in which the state intended to rely upon during trial.

Therefore, because of the fundamentally defective and void indictment for "form and substance," petitioner was denied his constituional right to be informed of the charges against him and the affects of the charging instrument in which he couold prepare a defense against the charges against him. And because of such denial of constitutional protections, and the state's failure to correct the invalid and fundamentally defective and void indictment when having an opportunity to do so, this Court in all things should reverse the trial courts conviction and punishment and remand back for further proceedings.

ISSUE #2: WAS PETITIONER'S "DUE PROCESS & EQUAL PROTECTION OF THE LAWS" RIGHTS VIOLATED WHEN THE TRIAL COURT ALLOWED EVIDENCE "ILLEGALLY

(2)

INSUFFICIENT" TO BE ENTERED INTO THE TRIAL, LESSENING THE STATES BURDEN TO PROVE "BEYOND A REASONABLE DOUBT" EVERY ELEMENT OF THE OFFENSE CHARGED IN THE INDICTMENT?

In reviewing a legal sufficiency challenge to the evidence, courts credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. [CITY OF KELLER vs. WILSON, 168 S.W.3d 802, 827 (Tex.2005)]. A legal sufficieny challenge will be sustained when there is a complete absence of evidence of a vital fact, thus, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, when that evidence offered to prove a vital fact is nothing more than a scintilla, or the evidence conclusively establishes the opposite of the vital fact. [MERRELL DOW PHARMS., Inc. vs. HAVNER, 953 S.W.2d 706, 711 (Tex.1997)].

As previously argued in ISSUE #1, and hereby incorporated into ISSUE #2, as if presented and argued herein, this Court must "reverse and remand" this case back to the trial court for further proceedings based upon the "insufficieny of the evidence" to support the charge as alleged in the indictment. Although the jurors are free to choose among reasonable constructions of the evidence, however, if the evidence gives equal or nearly equal circumstantial support to a theory of guilt or innocence, this court must reverse the conviction and punishment, as under these circumstances "a reasonable jury must necessarily entertain a reasonable doubt." [U.S. vs. SANCHEZ, 961 F.2d 1169, 1173 (5th Cir.1992)]. Petitioner contneds that there was a fatal variance between the crimes alleged/charged and the the crime that the state allegedly proved at trial. To prove that petitioner was guilty of the alleged crimes in both counts one and two, as alleged by the state as petitioner knowingly committed the criminal offense in count one; then alleged a separate and different element for count one as being reckless in his culpable state of mind in committing the alleged offense. It has been established that one cannot act "intentionally/knowingly," and "recklessly" at the same time. If a person acts voluntarily to commit an illegal act, then, he does not act with a reckless mental state of mind. And because the state allegedly proved the case of petitioner allegedly shooting Ms. Hardy, therefore, there cannot be evidence to support that petitioner acted "reckless" in shooting the victim Ms. Hardy. The state therefore, failed to prove beyond a reasonable doubt every facial allegation of the indictment, and the theroies presented in the indictment as to: "knowingly discharge a firearm," and act "reckless as to whether the habitation was occupied" while discharging the firearm at...the habitation.

This is true irregardless of whether the state intended to charge that particular offense. The jury charge must not enlarge the offense alleged based upon the indictment charge, thus, authorizing the jury to convict on a basis or theroy permited in accordance to law where it is clearly established that a person cannot act both "intentionally/knowingly," and "recklessly" at the same time in committing an alleged criminal offense. "The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." [IN RE WINSHIP, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)].

Therefore, the verdict must be set aside pursuant to the legally sufficiency of the trial courts allowing evidence be entered without proof beyond a reasonable doubt, thus, reducing the state's obligation and burden of proof to prove its case against the petitioner, knowing that a person cannot act either intentionally and knowingly, but not at the same time act recklessly; after viewing all of the evidence without the prism of "in the light most favorable to the prosecution," it is contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. [CLEWIS vs. STATE, 922 S.W.2d 126, 132-33 (Tex.Crim.App.1996)].

**ISSUE #3:** DID JUSTICE AL SCOGGINS, DECISION FOR THE TENTH COURT OF APPEALS OF TEXAS, VIOLATE "WELL ESTABLISHED FEDERAL LAW, AS ESTABLISHED BY THE U.S. SUPREME COURT, WHEN THE DECISION WAS 'CONTRARY TO, OR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT" WHEN "AFFIRMING THE TRIAL COURTS DENYING PETITIONER'S MOTION FOR MISTRIAL?"

A staTE court decision is considered "contrary to...clearly established federal law" if it "diametrically different, opposite in character or nature or muturally opposed." [WILLIAMS vs. TAYLOR, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.ed.2d 389 (2000)]. To be found on "unreasonable application of...clearly established federal law," the state-court decision must be "objectively unreasonable" and not simply erroneous or incorrect." Id., at 409-11, 120 S.Ct. 1495. The Tenth Court of Appeals of Texas based it's decision on denying relief to Petitioner upon the following reason(s): (a) "uncertainty after reviewing the evidence, whether the examination by the state of it's witness' testimony in reference to witness being shot by her mom's boyfriend, was 'inflammatory' as to be incurable by the courts jury instruction to disregard. [DEFENDANTS FIRST MOTION FOR MISTRIAL]; (b) in regards to the defenses [SECOND MOTION FOR MISTRIAL], the appellate court "presumed" that a jury followed the court's instruction to disregard testimony that was absent of some proof in the record as is the case in this issue #three;

(4)

where the state's star witness, and an alleged victim in this case, had testified that he was in fear for his family and himself's safety because of his playing a dual role as victim and informant for the state, where the state failed to present any facts, witnesses, or evidence, and further failed to notify the defense of its sealing the witnesses (informants) testimony so that the defense could make alternative preparations for a defense against the denial and/or limitations of cross-examination of this witness; again, the appellate court was without certainty as to the trial court abusing its discretionary powers in denying a mistrial; and (3) during the trial, the prosecutor during closing arguments, not once, but twice, stated that "If Pinkie Hardy had died; as the doctor said by all account she should have, and we're standing here arguing to you today on a murder case. With the kind of criminal history that he (petitioner) has, you have a drug dealer from Houston who comes into this community to sell poison and then commits a murder while he's here." Again, the appellate court denied relief, stating that the court did not believe, and did not say that they were certain, but, stated that "we do not believe," that the prosecutor's statement was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard.

In evaluating whether the declaration of a mistrial was warranted in the instant case, the Court of Appeals, as well as the trial court failed to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial arose and should have been granted. Rather, the Court of Appeals, as well as the trial court adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial. The jury in this case was admonished as to the charges placed against the petitioner at the beginning of the trial during the reading of the indictment. During the closing argument, and after the state presented all of its evidence and witnesses, the prosecution alleged yet another charge in which was not placed in the indictment, and nor was it put before the jury to hear and evaluate evidence of such charge of murder of Ms. Pinkie Hardy. Yet, the jurors each heard and considered the bad character of the Houstonian who comes into the nieghborhood and commits such heineous crimes as selling drugs then shooting the nieghbors. The state created a great and substantial harm and prejudice to any defense and jury instruction of curing such closing arguments of a crime in which petitioner was not charged or on trial for. The state created a "false impression" upon the fact finders ability to weigh the actual evidence against that of the "false impression" of murder raised and argued by the state in its closing argument.

And because of the "false impression" of an non-existant extraneous offense of murder, the fact finders were coupled with such erroneous and false facts which had no bearing upon the case in chief, and was presented by two of the state's attorney's during closing arguments to support each others arguments of petitioners guilt for the purpose of nothing more than to cause harm and prejudice toward the defendant and his case in defense.

Because of such unlawful conduct by the state, petitioner was denied his right to a "fair and impartial jury trial," thus, violating his "due process and equal protection of the laws." And because of petitioner's raising and presenting a constitutional error, the standard of review is, "(a) If the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not con-tribute to the conviction or punishment." [Tex.R.App.Pro., Rule 44.2(a)]. Here, the court of appeals continually stated that "we cannot say" (with certainty/in the first motion for mistrial); "we cannot say," (with certainty/in the second motion for mistrial); and "we conclude that the trial court did not abuse its discertion...in the third denial for motion for mistrial. "It has long been the law of this State that the law provides for, and presumes, that the accused person will receive a fair trial, and a fair trial cannot be had if it is not free from improper jury argument." [CORTEZ vs. STATE, 683 S.W.2d 419, 420 (Tex.Crim.App.1984) citing RICHARDSON vs. STATE, 257 S.W.2d 308 (Tex.Cr.App.1953)]. It is apparent through the appellate records, and the appellate judges, that they "cannot say" beyond a reasonable doubt that the petitioner's case was constitutional and that the trial judge acted within the scope of his discretionary powers when denying petitioner's motions for mistrial.

**ISSUE #4:** WAS PETITIONER'S SIXTH AMENDMENT RIGHT VIOLATED WHEN THE TRIAL COURT RESTRICTED "CROSS-EXAMINATION" OF THE COMPLAINING WITNESS REGARDING HIS "PAST DISHONESTY AND BEING A LONG TIME CONFIDENTIAL INFORMANT," WHEN THE STATE ALLEGED THE SAFETY & HEALTH OF THE WIT-NESS, CREATING A "FALSE IMPRESSION" OF PETITIONER'S CHARACTER BE-FORE THE JURY WITHOUT PRESENTING EVIDENCE, WITNESSES OR ANY OTHER SUPPORTING FACTS TO SUBSTANTIATE THE NEED TO PLACE SUCH LIMITATIONS ON THE DEFENSES CROSS-EXAMINATION OF THE STATES STAR WITNESS?

"In all criminal prosecutions the accused shall...be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor." [TEXAS CONSTITUTION, article I, §10].

"In all criminal prosecutions the accused shall...be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor." [Texas Code of Criminal Procedure, article 1.05].

"In all criminal prosecutions, the accused shall enjoy the right...to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor." [United States Constitution, article V, amendment 6]. The Sixth Amendment protects an accused's right to cross-examine a witness, but it does not prevent a trial court from limiting cross-examinationon legitimate concerns such as harassment, prejudice, confusion of the issues, or to exclude evidence that is marginally relevant." [KESTERSON vs. TEXAS, 997 S.W.2d 290, 293 (Tex.App.-Dallas 1999, no pet.)(citing DELAWARE vs. VAN ARSDALL, 475 U.S. 673, 679 (1986)].

The primary function of the "Confrontation Clause" is to protect the right of cross-examination. [DOUGLAS vs. ALABAMA, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)]; and, one of the functions of cross-examination is to allow the jury to assess the credibility of the witness. MATTOX vs. U.S., 156 U.S. 237, 242-43, 15 S.Ct. 337, 39 L.Ed. 409 (1895)]. In the instant case, Mr. David Roberson, who was the target of a falsification and obstruction of justice through his beneficial plea bargain agreement, and as being an informant for the state in unrelated cases against other persons, which resulted in the state dismissing criminal charges against Roberson, and in exchange for his testimony against the petitioner. However, after testifying for the state on direct, Roberson refused to answer any defense questions on cross. And that his testimonial evidence was "so unduly prejudicial that it rendered the trial fundamentally unfair," and deprived petitioner of his right to due process through the cross-examination of the states witness.

In accordance to Supreme Court decisions in [U.S. vs. WONG, 431 U.S. 174, 178, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977)("The Fifth Amendment privilege does not condone perjury."); U.S. vs. APFELBAUM, 445 U.S. 115, 131, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980)(holding that "neither the federal use immunity statute nor the fifth amendment precludes the use of immunized testimony at a subsequent prosecution for making false statements"); see also U.S. vs. MANDUJANO, 425 U.S. 564, 576, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976)("In this constitutional process of securing a witness' testimony, perjury simply has no place whatsoever.")]. Petitioner in his attempt to cross-examine the sstates star witness, Mr. Roberson, Roberson declared that he refuses to testify because he was in "fear for his and his family's safety." However, the state argued that the witness was threatened by the petitioner

when he had passed throughout the jail to various certain inmates, a copy of the trial transcripts, which showed that he was an informant for the state. However, during the defenses attempt at cross-examining this star witness, the state's attorney informed the court of this alleged incident and the witnesses fears, and that the state had sealed all of the transcripts so that the defense could not obtain them and use them against the star witness during cross-examination of petitioner's trial of guilt and innocence. In fact, the trial counsel stated that he was unaware of any of those facts and allegations as the state produced to prevent the defense from learning the facts and false testimonies of the star witness. Mr. Roberson. In the state's failure to provide the defense with evidence of discovery of the bargain struck between the state and the star witness, Mr. Roberson, harm resulted from such denial of constitutional right that it "hindered, prevented and denied" the defense proper notice of the states intent to prevent cross-examination so that the defense could defend his case in other means or argue the fact of the state's denial of cross-examination without the state ever once producing any evidence or witnesses to the fact that the trail transcripts were being passed throughout the jail, who had passed the transcripts, and who received the transcripts and for what purpose the transcripts were being passed. Because of the underhandedness of the state's sealing of the record, the states objection to the defenses cross-examination of its star witness for alleged fear for personal and family security and safety; the defense was denied proper cross of the witness for impeachment purposes which critically affected petitioner's outcome of the trial, and further denied the fact finders of the right to properly evaluate and determine for themselves the credibility of the witness.

It is the role of the court to provide a level playing field for the advocacy of ideas, causes of action and defenses. The purpose of timely discovery is to further that goal so that each side has a fair opportunity to present the case to the jury. Because the state failed to provide the defense with pertinent evidence of the witness' testimony, and it's intended sealing of the transcripts, and the denial of cross-examination of the witness, in a timely notice; the state clearly ambushed the defense, surprised and created an unfair trial process in which the defendant was clearly harmed, prejudiced, injured in his abilty to present a defense against the state's actions, and his constitutional right to "due process" was violated through the state's impeding upon the petitioner's right to cross-examine the witness for credibility and character for impeachment purposes as is allowed through the Texas Rules of Evidence.

The harm and prejudice resulted in **"reversible error"** because the petitioner's defense was very limited through cross-examination when (1) impeachment would have been critically affected; (2) which made it virtually impossible for the petitioner to show the appellate court how effective his cross-examination or rebuttal testimony would have been had he been given adequate opportunity for discovery and cross-examination; and (3) when petitioner was denied his Sixth Amendment right to a "fair trial," to "an impartial jury," to "confront witnesses against him," and to "call witness in his favor" to rebute any evidence or witness of the state, when the state alleged that the witness was placed in danger of his safety because of his testimony during a pre-trial hearing was being passed around throughout the jail to various certain inmates who would cause harm and injury to the witness and/or his family, yet, the state failed to produce any supporting evidence and/or witnesses that the trial transcripts were in deed being passed throughout the jail, that the petitioner was the person responsible, or called any witnesses, or named any jail inmate who had received the transcripts and for what purpose to prove this allegation with the unlawful intent to prevent the defense from cross-examining the state's star witness, Mr. David Roberson. The state further failed in providing notice/discovery to the defense of the state sealing such said transcripts until during the trial and the attempted cross-examination of the state's star witness Mr. Roberson, thus, knowingly and intentionally depriving and violating petitioner's "Due Process and Equal Protection of the Laws," through the violation and intent to deprive the petitioner during trial the right to confront the witnesses against him.

In conducting a criminal trial, the court must protect the rights of the accused under the Sixth Amendment, including the right "to be confronted with witnesses against him." [U.S. vs. DIAZ, 637 F.3d 592 (5th Cir.2011); U.S. vs. WILCOX, 631 F.3d 740 (5th Cir. 2011); BIGLEY vs. DREKTE, 402 F.3d 551 (5th Cir.2005) ("Cornerstone of American judicial system is right to fair and impartial process); BROWN vs. STATE, 122 S.W.3d 794 (Tex.Crim.App.2003)]. The right to confrontation includes the right of the accused to use cross-examination to present a defense to the charges against him. [YOUNGER "Confrontation, 24 Washburn L.J. 1, 28 (1984); U.S. vs. DAVIS, 393 F.3d 540 (5th Cir.2004); CORONADO vs. STATE, 351 S.W.3d 315 (Tex.Crim.App.2011)("The right to confrontation includes not only the right to face-to-face confrontation, but also the right to meaningful and effective cross-examination."); see also HAMMER vs. STATE, 296 S.W.3d 555 (Tex.Crim.App.2009)]. In CHAMBERS, the U.S. Supreme Court's application of Mississippi's voucher rule

(a party calling a witness vouches for the credibility of that witness) prevented defense counsel from impeaching his own witness by prior inconsistant statements. At trial, the witness testified that the defendant had committed the crime, but in earlier statements the witness had admitted to the crime. The Supreme Court found that the exclusion of this evidence violated the Confrontation Clause. "The right to cross-examination is more than a desireable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth determining process. [CHAMBERS vs. MISSISSIPPI, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973)]. The right does not depend upon whether the witness was put on the stand by the accused or the prosecution. Id., at 298, 93 S.Ct., at 1047.

Petitioner in his appeal, claimed that his 6th Amendment rights to cross-examine the state's star witness were violated in a number of situations that arose during trial. These included the refusal of the trial court to allow inquiry into a confidential informants/alleged victims continuing and future undercover police work for the state in order to be free from his criminal activities, and the exchange for immunity/reduced criminal charges/reduced sentencing, or whatever else that may have occurred during this bargain making process of the witness beingan informant for the prosecution, which deprived the defense of such information so confrontational purposes of impeachment and presenting a viable defense against the prosecution for the alleged fact of the witness **"NOW"** being in fear of his safety and the state sealing such important trial transcripts, knowing that the the states witness would be impeached and the state stood chance of losing the case against the petitioner.

The state entered an alleged "conspiracy" that the witness' life was in danger because of some alleged trial transcritps were being passed throughout the jail to certain various jail inmates, however, the prosecution failed to present any supporting evidence, any witnesses to testify to this alleged conspiracy against the star witness/informant, nor did the state show **"good cause"** for denying the defense his right to cross-examination and the sealing of the trial transcript, which jeopardized petitioners defense against the charges against him and the testimony of the states star witness; and the right to utilize state procedures set forth in the Texas Code of Criminal Procedures, the Texas Rules of Appellate Procedures, Texas Rules of Evidence, The United States Constitution's 6th Amendment right to "Confrontation," and the Texas Constitution's right to Confrontation of the witnesses against the petitioner in a fair and impartial trial tribune.

In doing so, the State/prosecution intentionally used "surprise/ambush tactics" of (1) denying the defense with notification of sealed records for the alleged safety of the witness; (2) that the defendant was under suspicion of passing the alleged trial transcripts throughout the jail to certain jail inmates that would result in harm and injury to the witness or his family; (3) presented inconsistent and/or no evidence or testimony of the certain jail inmates whom received or who had notice of the witness being an confidential informant for the proisecution in several unrelated cases and for many years, and who had been the person who had passed the transcripts throughout the jail; and (4) nor had the prosecution established "good cause" for failure to notify the defense of the sealing of the records and the advice to the star witness to claim his fifth amendment right to not testify as to the terms and facts of the plea agreement for either "no conviction of charges pending agsint him, or a reduced sentenced of punishment for his testimony," and why the prosecution had waited until trial and at the defenses cross-examination of the witness before notifying the defense or the court.

Since petitioner is raising a constitutional error, the standard of review is, "(a) If the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." [Texas Rules of Appellate Procedure, rule 44.02(a)]. In the prosecutions ambush and surprise tactic performance, the prosecution created a "false impression" before the jurors which harmed and prejudiced petitioner's case, when, without presenting any supporting evidence and/or producing any jail inmate witnesses to support the allegation and false impression of the petitioner intentionally desiring to cause serious bodily harm and injury to the witness for the purpose of preventing the witness, Mr. David Roberson from testifying during petitioner's guilt and innocent stage of trial, by passing around the jail trial transcripts which showed that the witness Mr. Roberson was an informant for the state and prosecution, Thus, the prosecution was **vouching** for its witness, Mr. Roberson, in violation of well established federal law as determined by the United States Supreme Court in CHAMBERS vs. MISSISSIPPI, 410 U.S., at 295, 93 S.Ct., at 1045; creating a false impression of the defendant without presenting or producing any evidence or witnesses proving the allegation that the defendant was the person responsible for the passing of trial transcripts to various certain inmates in the jail, and causing great harm and damage and prejudicing petitioner's right to a fair and

(11)

impartial jury trial, his right to defend his case and character as the state had presented allegations against him and his character in general; his right to cross-examine witness' against him; his right to defend against any charges/allegations against him by the state; his right to present and have witnesses and evidence in his favor, and especially against the conspiracy claims the state/prosecution had made against the petitioner during trial to prevent him from cross-examining the states star witness. If the state/prosecution is permitted to cross-examine a defendant or a defense witness who creates a false impression, the defendant should be permitted to cross-examine a state's witness who has created a false impression. [SAGLIMBENI vs. STATE, 100 S.W.3d 429, 434 (Tex.App.-San Antonio 2002, pet. ref'd)]. In the instant case, the ability to correct the false impression in which the state/prosecution had entered into the trial and before the jury for their consideration, and irregardless of any instruction which could not be cured under the immediate circumstances, the defense was denied that very exact remedy sought to correct this constitutional error committed by both the state and the trial judge in allowing it to proceed before the jurors, and created great harm and prejudice which could not possibly be cured by any jury instruction to disregard. Although the trial court may reasonably limit cross-examination of a witness, the trial court did not have the authority to deny the defense complete denial of constiuttional rights, privileges and immunities. In [VIRTS vs. STATE, 739 S.W.2d 25, 29-30 (Tex.Crim.App.1987)], the court found that the cross-examination should have been allowed "because it might have aided the jury in deciding whether to believe" the witness. The harm in the instant limiting to cross-examination, and allowing the state/prosecution to enter unproven facts of some unconstitutional tactic the prosecution schemed up about the trial transcripts being passed around in the jail to cause injury to the safety of the witness without providing evidence or witnesses to verify this alleged fact, amopunts to a case of "he-said-she-said," where the questions disallowed on cross-examination bear directly on the complaining witness' credibily, is plain. Thus, depriving the jury of relevant information relating to whether they can trust the complaining witness, or determine the alleged facts raised by the prosecution that the defendant intended harm and injury to the witness, denies the petitioner the most fundamental of rights. [U.S. Const., amend. 6 and 14; SANSOM vs. STATE, 292 S.W.3d 112, 119 (Tex.App.-Houston [14th Dist] 2008, pet. ref'd)("The proper scope of cross-examination includes 'all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the

cause only."); quoting KOEHLER vs. STATE, 679 S.W.2d 6, 9 Tex.Crim.App.1984); citing JACKSON vs. STATE, 482 S.W.2d 864, 868 (Tex.Crim.App.1972)].

Thus, based upon the manifest impropriety of the prosecution's unconstitutional and violative acts and conduct of mandatory laws and statutes which create a right to the petitioner to utilize state/federal procedures to seek relief from any charge of criminal act against him, through his exercising and performing acts under the U.S. Constitution, Amendments 1, 4, 5, 6, and 14, petitioner respectfully requests that this Honorable Court and it's Honorable Justices to reverse the trial court's judgment and remand the case for further proceedings pursuant to the Texas Rules of Appellate Procedures.

**ISSUE #5:** WAS PETITIONER'S SECURED AND GUARANTEED DUE PROCESS RIGHTS PROTECTED WHEN THE TRIAL COURT ALLOWED THE STATE TO PRESENT EXTRANEOUS OFFENSES AND IRRELEVANT FACTS TO SHOW THAT PETITIONER WAS A CRIMINAL OR BAD CHARACTER IN GENERAL?

In the petitioner's fifth issue for review, through his appellate counsel, he raised the issue of the state charging him twice for the "same criminal activity," in which the state had to prove the same elements of the case with the same evidence in order to convict. Furthermore, quoting "POLLARD vs. STATE, 255 S.W.3d 184, 189 (Tex.App.-San Antonio 2008), aff'd, 277 S.W.3d 25 (Tex.Crim.App.2009) (if several crimes are intermixed, or connected, the evidence may be contextual evidence, "same transaction" contextual evidence and "background" contextual evidence.)]. Generally, definitions of the terms and elements of an offense are essentially evidentiary and need not be alleged in the charging instrument. [THOMAS vs. STATE, 621 S.W.2d 158, 161 (Tex.Crim.App.1981)]. However, if a statute provides more than one way for the defendant to commit the act or omission, then on timely request, the state must allege the manner and means it seeks to establish. [FERGUSON vs. STATE, 622 S.W.2d 846, 851 (Tex.Crim.App.1981)]. This exception insures a defendant is put on notice as to what behavior he allegedly engaged in so that he can properly prepare a defense to that allegation.

Before trial proceedings started, counsel for the defense made his objections to any and all aggravated assault/possession of the firearm by a felony based upon the state causing a "confusion" of the charges for the jury consideration in the fact of allowing a "serious bodily injury evidence" to the finding of a deadly weapon for the "Unlawful Possession of a Firearm" offense in which petitioner was not on trial for. The State alleged in the indictment, Count One, that the "defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm,"

which in the manner of its use or intended use was capable of causing death or serious bodily injury." When the State alleges in an indictment that the defendant committed the offense of "DEADLY CONDUCT," with a deadly weapon, and that the deadly weapon used by the defendant was a firearm, as it did in this case, it is required to prove use of a firearm beyond a reasonable doubt. IN Count Two of the same indictment, the state alleged that the defendant: "during the commission of the aforesaid offense, the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, which in the manner of its use was capable of causing death or serious bodily injury, by discharging said firearm...". The second count of the indictment was overkill by the state, and solely placed for a lesser burden of proof, and a guarantee of a conviction, when using the same incident, same evidence, same witnesses, and same time periods to produce more charges out of one single criminal episode as accorded by the CARVEN DOCTRINE allows.

Furthermore, in the same indictment and under the second count, the State also alleged evidence into the trial of petitioner being chased by the police, proving guilt of the alleged crimes alleged in the indictment, when no evidence was provided proving the allegation. Such allegation was harmful and prejudicial to the petitioner's case by inflaming and prejudicing the jurors mind with his guilt by fleeing the crime scene. Thus, creating a false impression that the defendant was a criminal in nature and character, causing confusion as to the facts in which the jurors were allegedly to determine as true, credible and trust worthy as to prove beyond a reasonable doubt that the accused/defendant was actually guilty of the crime in which he was charged. Furthermore, the state/ prosecution failed to provide any supporting evidence that proved beyond a reasonable doubt that the defendant fled the scene because he was guilty of any crime as alleged. In fact, it is only natural that a person such as the petitioner in this case to leave a place in which he had just gotten kicked out of his girl-friends/lovers bed because another lover/boy-friend had came knocking. Therefore, the state failed in its obligation to prove that because petitioner left the alleged crime scene, that he was guilty. Also, it has allready been established that the petitioner had in his possession the alleged gun which allegedly was used to shoot the victims Ms. Hardy and Mr. Roberson, and alleged drug sales. Because of the lack of and no evidence to support the second count of the indictment, and the violation of Petitioner's Due Process rights, this Court should "reverse and remand this case back for further proceedings."

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that this Court, and it's Honorable Justices, thereby GRANTS Petitioner's MOTION FOR DISCRETIONARY REVIEW, under each respective issue as raised and argued hereinabove, and ORDERS that this Petition be remanded back to the lower courts for further proceedings for "reversal of the trial courts judgment and punishment" based upon the constitutional errors raised hereinabove, and all other relief that this Honorable Court and it's Honorable Jusitces may deem just and fair in accordance to the laws and constitutional rights, privileges and immunities.

Respectfully Submitted,

_Quincy Butler_

Quincy Butler
c/o TDCJ-ID #1899541
Allred Unit, 2101 FM 369 N.
Iowa Park, Texas 76367

## UNSWORN DECLARATION

I, Quincy Butler, TDCJ-ID #1899541, do hereby declare under the penalty of perjury, and the laws of the State of Texas, that the foregoing instrument and the facts stated herein, are true and correct to the best of my first hand personal knowledge and belief, as I am the Petitioner in this case matter, and am qualified to make such accurate and true statements hereinabove; pursuant to Title 28 U.S.C., §1746.

Dated this 5th day of February, 2015,

_Quincy Butler_

Qunicy Butler,       Petitioner

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the above and forgoing PETITIONER FOR DISCRETIONARY REVIEW has been mailed to the Clerk of the TEXAS COURT OF CRIMINAL APPEALS, Mr. Abel Acosta, P.O. Box 12308, Capitol Station, Austin, Texas 78711, on this 5th day of February, 2015.

_____,
Quincy Butler

## NOTICE OF NON-COMPLIANCE WITH TEXAS RULES OF APPELLATE PROCEDURES

Petitioner asserts that he is unable to provide the number of requested copies as set forth under the rules of the Texas appellate procedures, because he is an inmate incarcerated within the Texas Department of Criminal Justice-Institutions Division, and has no access to a copying machine, and is not allowed by TDCJ rules, and policies to use or operate one that belongs to the TDCJ agency for purposes of complying with court orders, instructions or other means. Petitioner respectfully requests that the Clerk and/or a member of the Clerk's office may make the required copies and serve the necessary parties who has an interest to this cause of action, and further prays that this "non-compliance" with the Texas Rules of Appellate Procedures will not bar his attempt for relief from this Court, and/or cause his PDR be dismissed because of non-compliance. Petitioner further asserts that he is an indigent person, who does not receive monetary benefits for his labors, and nor does he have family or friends who support him with gifts of monetary benefits.

_____,
Quincy Butler,      affiant



# IN THE
# TENTH COURT OF APPEALS

## No. 10-13-00430-CR

QUINCY DESHAN BUTLER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 272nd District Court
Brazos County, Texas
Trial Court No. 12-00472-CRF-272

## MEMORANDUM OPINION

In five issues, appellant, Quincy Deshan Butler, challenges his conviction for deadly conduct by discharging a firearm. *See* TEX. PENAL CODE ANN. § 22.05(b) (West 2011). We affirm.

# I. BACKGROUND[1]

This is the not the first time this criminal transaction has been before this Court. *See, e.g., Ex parte Butler*, No. 10-13-00362-CR, 2014 Tex. App. LEXIS 5833 (Tex. App.—Waco May 29, 2014, pet. ref'd) (mem. op., not designated for publication); *State v. Butler*, No. 10-12-00234-CR, 2013 Tex. App. LEXIS 5541 (Tex. App.—Waco May 2, 2013, pet. ref'd) (mem. op., not designated for publication). In the instant case, appellant was charged by indictment with deadly conduct by discharging a firearm and unlawful possession of a firearm by a felon.[2] Included in the indictment were two enhancement paragraphs referencing appellant's prior felony convictions for unlawful possession of a controlled substance. At the conclusion of the evidence, the jury found appellant guilty of engaging in deadly conduct by discharging a firearm. Additionally, the jury concluded that the enhancement paragraphs were true and subsequently sentenced appellant to sixty-two years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. APPELLANT'S MOTION TO QUASH THE INDICTMENT

In his first issue, appellant contends that the trial court erred in denying his motion to quash the indictment in this case.

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

[2] As explained later, there has not been a trial on the charge for unlawful possession of a firearm by a felon. As such, appellant's conviction for deadly conduct by discharging a firearm is the subject of this appeal.

Butler v. State <span style="float:right">Page 2</span>

## A. Applicable Law

The sufficiency of an indictment is a question of law. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Therefore, we review de novo a trial court's ruling on a motion to quash an indictment. *Id.* An indictment is sufficient when it charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged. TEX. CODE CRIM. PROC. ANN. art. 21.11 (West 2009).

## B. Discussion

Here, the indictment provides the following, in relevant part:

QUINCY BUTLER hereinafter referred to as the Defendant, heretofore on or about May 28, 2011, did then and there knowingly discharge a firearm at or in the direction of individuals, namely, Pinkie Hardy and David Robertson [sic],

And it is further presented in and to said Court that, during the commission of the aforesaid offense, the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury,

PARAGRAPH TWO: and it is further presented in and to said Court, that the said QUINCY BUTLER, in the County of Brazos and State of Texas on or about the 28th day of May, 2011, did,

Then and there knowingly discharge a firearm at or in the direction of a habitation, and the defendant was then and there reckless as to whether the habitation was occupied, to-wit: by discharging said firearm at a habitation knowing that Pinkie Hardy and David Robertson [sic] were inside of said habitation,

And it is further presented in and to said Court that, during the commission of the aforesaid offense, the defendant did then and there use

or exhibit a deadly weapon, to-wit: a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury.

COUNT TWO: and it is further presented in and to said Court, that the said QUINCY BUTLER, in the County of Brazos and State of Texas on or about the 28th day of May, 2011, did,

then and there, having been convicted of the felony offense of Possession of Controlled Substance on the 7th day of February, 2008, in Cause No. 44367 in the 240th District Court of Fort Bend County, Texas, intentionally or knowingly possess a firearm before the fifth anniversary of the defendant's release from confinement following conviction of said felony,

And it is further presented in and to said Court that, during the commission of the aforesaid offense, the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury, namely, by discharging said firearm at Pinkie Hardy and David Robertson [sic] or at a habitation in which the defendant knew Pinkie Hardy and David Robertson [sic] were located . . . .

In his motion to quash, appellant argued that: (1) Count 2 of the indictment improperly charges appellant with two different crimes—unlawful possession of firearm by a felon and deadly conduct; (2) the deadly-conduct allegation fails to state a culpable mental state; (3) the indictment improperly expanded the definition of deadly weapon to include extraneous acts and offenses; and (4) the indictment improperly charges appellant with the same offense—deadly conduct—in both Counts 1 and 2 of the indictment, thereby violating his rights to due process and double jeopardy.

1.    **Count 2 of the Indictment**

With respect to Count 2 of the indictment, the record is clear that appellant has not been tried on that count. As such, appellant's complaints about Count 2 of the indictment amount to an interlocutory appeal of the trial court's denial of his motion to

quash. *See, e.g., Chambliss v. State*, No. 10-13-00002-CR, 2013 Tex. App. LEXIS 2060, at **1-2 (Tex. App.—Waco Feb. 28, 2013, no pet.) (mem. op., not designated for publication). We do not have jurisdiction of an interlocutory appeal of the denial of a motion to quash an indictment. *See Abbott v. State*, 271 S.W.3d 694, 696-97 (Tex. Crim. App. 2008) (noting that the standard for determining jurisdiction is not whether the appeal is precluded by law, but whether an appeal is authorized by law); *Everett v. State*, 91 S.W.3d 386, 386 (Tex. App.—Waco 2002, no pet.) (stating that the court has jurisdiction over criminal appeals only when expressly granted by law); *Wright v. State*, 969 S.W.2d 588, 589 (Tex. App.—Dallas 1998, no pet.) (stating that appellate court may consider appeals by criminal defendants only after conviction); *see also Charboneau v. State*, No. 05-13-00203-CR, 2013 Tex. App. LEXIS 1793, at *2 (Tex. App.—Dallas Feb. 20, 2013, no pet.) (mem. op., not designated for publication) ("Orders denying pretrial motions to suppress, quash a complaint, and dismiss are not appealable interlocutory orders."). Therefore, we lack jurisdiction to address appellant's first and fourth contentions—both of which center on Count 2 of the indictment. *See Abbott*, 271 S.W.3d at 696-97; *Everett*, 91 S.W.3d at 386; *Wright*, 969 S.W.2d at 589; *see also Chambliss*, 2013 Tex. App. LEXIS 2060, at **1-2; *Charboneau*, 2013 Tex. App. LEXIS 1793, at *2.

### 2. Culpable Mental States

In his motion to quash, appellant also argues that the deadly-conduct allegation contained in the indictment failed to state all of the elements of the offense of deadly conduct by failing to state a culpable mental state. However, on appeal, appellant asserts that the indictment alleged the wrong culpable mental state. Specifically,

appellant contends that the "knowing" culpable mental state refers to the discharging of a firearm, and the "reckless" culpable mental state pertains to appellant's knowledge that the trailer house was occupied.

Based on our review of the record, appellant's complaint on appeal pertaining to the culpable mental states listed in the indictment do not comport with appellant's complaints made in his motion to quash. A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial. *See* TEX. R. APP. P. 33.1; *see also Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). Accordingly, because appellant's contention does not comport with the argument made at trial, this contention presents nothing for review. *See* TEX. R. APP. P. 33.1; *see also Lovill*, 319 S.W.3d at 691-92.

### 3. The Deadly-Weapon Allegation

In his final contention in this issue, appellant asserts that the trial court should have granted his motion to quash because the State improperly added additional elements to the deadly-weapon allegation in the indictment. More specifically, appellant alleges that since a firearm is a per se deadly weapon, the State was not required to prove anything related to the manner of its use. However, as the Court of Criminal Appeals has recently stated, mere possession of a firearm during the commission of a felony is not sufficient to sustain a deadly-weapon finding. *Plummer v. State*, 410 S.W.3d 855, 858-60 (Tex. Crim. App. 2013). Rather, the State must prove that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction

was obtained; and (3) that other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc) (internal citations omitted). The language contained in the indictment merely identified the elements necessary for the State to prove the affirmative finding of a deadly weapon. *See id.* As such, we cannot say that the trial court erred in denying appellant's motion to quash on this ground. *See Moff*, 154 S.W.3d at 601. And based on the foregoing, we overrule appellant's first issue.

## III. APPELLANT'S MOTION FOR MISTRIAL

In his third issue, appellant complains that the trial court abused its discretion by denying his motion for mistrial on three different occasions during trial.

### A. Applicable Law

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.; see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648; *see Ladd*, 3 S.W.3d at 567.

## B.    Appellant's First Motion for Mistrial

First, appellant asserts that the trial court should have granted his motion for mistrial because of Ebony Hardy's reference to her mother being shot by a boyfriend. The following exchange serves as the basis for appellant's contention:

| [The State]: | When you saw her [Pinkie] out in the grass, what did you think? |
| --- | --- |
| [Hardy]: | I just thought about my mother. |
| Q: | And what happened to her? |
| A: | Her boyfriend also shot her in the head. |
| [Defense counsel]: | Objection, [Y]our Honor.  We're going to object to anything about what happened to— |
| THE COURT: | I sustain the objection. |
| [Defense counsel]: | We ask the jury be instructed to disregard. |
| THE COURT: | Ladies and gentleman, disregard that last statement[,] which had nothing to do with this case.  Strike it from your mind[,] and do not consider it for any purpose. |
| [Defense counsel]: | We would ask for a mistrial. |
| THE COURT: | That'll be denied. |

On appeal, appellant contends that this testimony was inflammatory, prejudicial, and necessitated the granting of his motion for mistrial. We disagree. The prosecutor's question here was general and did not expressly implicate appellant in the shooting of Pinkie, especially given that the evidence established that Pinkie was dating multiple people at the time of the incident. Based on our review of the evidence, we cannot say that the above exchange was so inflammatory as to be incurable by an instruction to

disregard. *See Ladd*, 3 S.W.3d at 567 ("The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard. A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."); *see also Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) ("In the vast majority of cases in which . . . testimony comes in . . . which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. In essence[,] this Court puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations."). Accordingly, we cannot say that the trial court abused its discretion by denying appellant's first motion for mistrial. *See Ladd*, 3 S.W.3d at 567; *Gardner*, 730 S.W.2d at 696; *see also Archie*, 221 S.W.3d at 699-700.

## C.    Appellant's Second Motion for Mistrial

Next, appellant argues that the trial court abused its discretion by denying his second motion for mistrial that pertained to testimony provided by David Roberson, one of Pinkie's boyfriends. At trial, Roberson, an individual with numerous stints in prison, indicated that he feared for his family's safety because of his trial testimony. Apparently, Roberson's fear stemmed from evidence presented at a hearing on appellant's motion to suppress. At that hearing, the evidence demonstrated that

Roberson had been indicted for first-degree felony possession of a controlled substance with intent to deliver; however, that charge was dismissed based on Roberson's prior work as a confidential informant for the Bryan Police Department. This evidence was suppressed, and a transcript of the hearing was produced. A copy of this transcript revealing Roberson's status as a confidential informant was given to appellant in the jail by appellant's appellate counsel. The State alleged that appellant made a copy of the transcript and distributed it throughout the jail before it was discovered by law enforcement. At a hearing held outside the presence of the jury, the State asserted that Roberson and his family were threatened as a result of appellant's distribution of the hearing transcript.

Thereafter, the trial court determined that the transcript of Roberson's testimony at the hearing on appellant's motion to suppress and the discussion of Roberson's status as a confidential informant should be sealed from appellant. As such, defense counsel and counsel for the State were ordered not to provide appellant with copies of this information. Appellant's counsel argued that he should be able to cross-examine Roberson about the sealing of the transcript, arguing that the sealing provided him an incentive to testify in favor of the State. In response, the trial court ruled that the sealing of the transcript was admissible to impeach Roberson; however, the trial court noted that the State could ask Roberson about the reason behind the sealing of the transcript.

On direct-examination, the State asked Roberson about his concerns about there being in existence a written transcript, to which Roberson responded, "Right." Defense

counsel objected, which the trial court overruled. Next, the State asked the following questions:

[The State]: And did we—after you brought that up to us, did we tell you we had asked the judge to enter an order to seal that particular part of the transcript so that it would exist for the defendant's lawyers for appellate purposes but it wouldn't be available to other people?

[Roberson]: Yes.

Q: And was that—is that because you feared for your safety?

A: Not so much as my family's. I mean, I'm good.

Defense counsel objected to this last question and requested that the trial court issue an instruction to the jury to disregard. Defense counsel also moved for a mistrial. In response, the trial court sustained defense counsel's objection and issued an instruction to the jury to disregard the question and answer pertaining to safety. However, the trial court denied defense counsel's motion for mistrial.

Testimony that refers to or implies extraneous offenses can be rendered harmless by an instruction to disregard by the trial court, unless the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see Harris v. State*, 164 S.W.3d 775, 783 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Furthermore, we presume that a jury follows a court's instruction to disregard testimony, absent some proof from the record that the jury did not or could not follow such an instruction. *See Thrift v. State*, 176

S.W.3d 221, 224 (Tex. Crim. App. 2005). Nothing in Roberson's testimony expressly implicated appellant or explained why Roberson feared for his safety and the safety of his family. Therefore, based on our review of the record, we cannot say that the question and answer pertaining to safety was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also McGinnis v. State*, No. 03-99-00824-CR, 2001 Tex. App. LEXIS 3171, at **10-12 (Tex. App.—Austin May 17, 2011, no pet.) (op. on reh'g) (not designated for publication) (concluding that a detective's statement that witnesses were reluctant to testify for fear of retaliation was curable by an instruction to disregard, and thus, the trial court did not abuse its discretion in refusing to grant a mistrial). Accordingly, we cannot say that the trial court abused its discretion in denying appellant's second motion for mistrial. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also Archie*, 221 S.W.3d at 699-700.

**D. Appellant's Third Motion for Mistrial**

And finally, appellant contends that the prosecutor's argument during closing argument warranted a mistrial. Specifically, appellant complains about the following statements made by the prosecutor:

> If Pinkie Hardy had died, as the doctor said by all account she should have, and we're standing here arguing to you today on a murder case. With the kind of criminal history that he [appellant] has, you have a drug dealer from Houston who comes into this community to sell poison and then commits a murder while he's here.

Defense counsel objected and requested a jury instruction to disregard and a mistrial. The trial court sustained counsel's objection and instructed the jury to disregard the "murder statement of counsel."

Assuming, without deciding, that the complained-of statement was improper, based on our review of the record, we conclude that the trial court's instruction to disregard cured any error. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also McGinnis*, 2001 Tex. App. LEXIS 3171, at **10-12. Appellant does not adequately explain, and we do not believe, that the prosecutor's statement was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also McGinnis*, 2001 Tex. App. LEXIS 3171, at **10-12. We therefore conclude that the trial court did not abuse its discretion in denying appellant's third motion for mistrial. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also Archie*, 221 S.W.3d at 699-700. We overrule appellant's third issue.

## IV. CROSS-EXAMINATION AND IMPEACHMENT OF ROBERSON

In his fourth issue, appellant complains that the trial court erred in refusing to allow him to cross-examine Roberson on the details of his work as a confidential informant.

### A. Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*,

380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68, 13 L. Ed. 2d 923 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 347 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17; 94 S. Ct. at 1110. The accused is entitled to great latitude to show a witness' bias or motive to falsify his testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982).

However, the right of cross-examination is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.; see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *see also Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993). Moreover, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 15 (1985)

(emphasis in original); *see Walker v. State*, 300 S.W.3d 836, 844-45 (Tex. App.—Fort Worth 2009, pet. ref'd).

**B.  Discussion**

On direct examination, Roberson testified before the jury that he was a confidential informant for the State and that he had a first-degree felony offense dismissed because of his work.  The trial court also allowed Roberson to testify about the transcript from the motion to suppress, which was sealed from disclosure for the witness's safety.  *See Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) ("Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, *the witness' safety*, or interrogation that is repetitive or only marginally relevant" (internal citations & quotations omitted) (emphasis added)).  Later, on cross examination, defense counsel also questioned Roberson about his role as a confidential informant.  In particular, defense counsel asked the following questions:

> [Defense counsel]:  And then you've had some—is it true you've had cases dismissed because you cooperated with law enforcement to testify against other individuals in those particular cases?
>
> [Roberson]:  Yes.
>
> Q:  And even in some other cases, that may not have anything to do with those; is that correct?
>
> A:  Yeah.

Besides the speculative nature of defense counsel's questioning about Roberson's service as a confidential informant, appellant has failed to show that eliciting the details

of Roberson's work as a confidential informant would show a greater bias than the evidence proffered. In other words, appellant has presented no evidence of a causal connection between the information appellant provided the State in his work as a confidential informant and his testimony in the instant case.

The Court of Criminal Appeals has stated:

> In *Irby*, the defendant wanted to cross-examine [the testifying complainant] about the fact that he was on deferred-adjudication probation for aggravated assault with a deadly weapon. As in *Carpenter*, the defendant argued to the trial judge that the witness's vulnerable status was relevant to show bias and motive. Once again, however, we held that the appellant failed to make a logical connection between [the complainant's] testimony . . . and his entirely separate probationary status. Reasoning that a mere showing of a witness's vulnerable status with the State, if evidenced only by his probationary status, would not make it any more or less probable that the witness harbored some bias in favor of the State, we concluded that the trial judge did not abuse his discretion in excluding this impeachment evidence because it was irrelevant.

> . . . .

> The fact that a witness stands accused of (for example) felony theft would not, if presented to the jury, make that witness seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused only of some unspecified felony. Both hypothetical witnesses—the one accused of felony theft and the other accused of the unspecified felony—would stand in the same vulnerable relation to the State; other things being equal, they would be subject to the same risk and extent of punishment. In other words, had the jury been presented with the fact that Joseph's felony charges were actually felony theft charges (and that Stefan's were actually felony robbery charges), it would have had no incrementally greater capacity to evaluate his potential for bias— its perception of the witness's vulnerable relationship with the state would be essentially the same as before. Thus, as in *Carpenter*, Appellant's bill of exception, insofar as it pertains to the nature of the witnesses' charged offenses, does no more than establish the factual basis of the pending [State] charges.

> . . . .

But a trial court's discretion does not simply terminate upon a showing that the proffered impeachment evidence and the allegation of bias are logically connected. Indeed, it is a basic tenet of the law of evidence that merely establishing the relevancy of proffered evidence does not necessarily guarantee its admissibility.

*Johnson v. State*, 433 S.W.3d 546, 553-54 (Tex. Crim. App. 2014) (internal citations & quotations omitted).

With regard to the wide latitude afforded trial judges in limiting cross-examination, the *Johnson* Court further explained:

This latitude is exceeded only when the trial court exercises its discretion to so drastically curtail the defendant's cross-examination as to leave him unable to make the record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. This kind of trial-court error is most conspicuous, of course, when the trial court entirely forecloses the defense from exposing—prohibits all inquiry into—a prototypical form of bias. But it may also be subtler, such as when the only record-making permitted the defense is so circumscribed that a reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination.

*Id.* at 555 (internal citations & quotations omitted).

Here, appellant was allowed to elicit testimony that Roberson had previously worked as a confidential informant. Appellant was not entirely foreclosed from exploring Roberson's potential bias, nor was appellant's defense "so circumscribed that a reasonable jury might have received a significantly different impression of [Roberson's] credibility had [appellant's] counsel been permitted to pursue his proposed line of cross-examination." *Id.* Therefore, based on our review of the record, we cannot say that the trial court erred in limiting appellant's cross-examination of

Butler v. State

Roberson about the contents of the sealed transcript, especially considering the trial court has wide latitude to limit cross-examination on the basis of a witness's safety. *See Irby*, 327 S.W.3d at 145; *see also Johnson*, 433 S.W.3d at 553-555; *Carpenter v. State*, 979 S.W.2d 633, 635 (Tex. Crim. App. 1998) (en banc) (concluding that the trial court did not err in refusing to allow the defense to cross-examine a witness about pending charges when the defense failed to demonstrate a causal connection between the witness's pending federal charges and his testimony in his state case). Accordingly, we overrule appellant's fourth issue.

## V. EVIDENCE OF SERIOUS BODILY INJURY AND CAR-CHASE EVIDENCE

In his fifth issue, appellant asserts that the trial court abused its discretion by admitting evidence of Pinkie's injuries and appellant's attempts to evade police.

### A. Standard of Review

We review a trial court's admission of evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

### B. Facts

At trial, the State proffered testimony about the injuries Pinkie sustained and appellant's subsequent flight from authorities. Specifically, witnesses testified that

appellant, Pinkie, and Roberson were involved in an argument and that appellant shot Pinkie through a door when he left Pinkie's trailer house. The evidence established that the bullet went through Pinkie's body, causing extensive injuries, and ultimately landed on the couch in the residence. After the incident, appellant fled the scene and engaged in a high-speed chase through multiple counties before finally being stopped by law enforcement in Waller County.

## C.    Evidence of Pinkie's Injuries

For several reasons, we cannot say that the trial court abused its discretion in admitting evidence of Pinkie's injuries. First, we emphasize that the State alleged in the indictment that appellant used a firearm that, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Therefore, one of the elements that the State had to prove was whether the victim, Pinkie, was in imminent danger of serious bodily injury when appellant purportedly shot through the door. Section 1.07(a)(46) defines "[s]erious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West Supp. 2014). The State proffered ballistics and crime-scene evidence demonstrating that Pinkie suffered serious bodily injuries—from which she almost died—during the commission of the offense. Because the complained-of evidence addressed an element of the charged offense, we conclude that the evidence was relevant. *See* TEX. R. EVID. 401; *see also Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) ("The proffered

evidence is relevant if it has been shown to be material to a fact in issue and if it makes that fact more probable than it would be without the evidence.").

Additionally, appellant argues that the probative value of the evidence of Pinkie's injuries was outweighed by the prejudicial effect. In particular, appellant complains that the State presented pictures of Pinkie's injuries and scars, her nightgown, the bloody interior of the car occupied by Pinkie, and bloody crime-scene pictures. Although the evidence depicts gruesome and bloody details, they are no more gruesome or bloody than the facts of the case. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2004) (stating that complained-of photographs only showed the victim's injuries and were no more gruesome than expected); *see also Sosa v. State*, 230 S.W.3d 192, 196 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (concluding that the prejudice caused by photographs did not substantially outweigh their probative value and noting that the photographs were no more gruesome than the facts of the offense). Furthermore, the complained-of evidence provided a necessary visual component to, and understanding of, witnesses' testimony regarding what they observed regarding the nature and extent of the victim's serious bodily injuries. We therefore conclude that the probative value of the evidence depicting Pinkie's injuries was not substantially outweighed by the alleged prejudice caused. *See* TEX. R. EVID. 403; *see also Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Montgomery*, 810 S.W.2d at 389 (noting that, when a trial court balances the probative value of the evidence against its danger of unfair prejudice, a presumption exists that the evidence will be more probative than prejudicial).

## D.    Evidence of the Car Chase

Next, appellant complains that the trial court erred in admitting evidence that he fled the scene of the crime and participated in a car chase in Waller County, Texas. We disagree.

"Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn." *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (citations omitted); *see Wachholtz v. State*, 296 S.W.3d 855, 859 (Tex. App.— Amarillo 2009, pet. ref'd) (stating that an effort to escape evinces a consciousness of guilt, which, in turn, is evidence of culpability). "To support the admission of evidence of escape from custody or flight it must appear that the escape or flight have some legal relevance to the offense under prosecution." *Bigby*, 892 S.W.2d at 883 (citations omitted);

Here, the evidence revealed that immediately after shooting and seriously injuring Pinkie, appellant fled from the scene in Brazos County. Appellant's flight continued with a high-speed car chase in Waller County shortly thereafter. Consequently, we conclude that the evidence demonstrated a relationship between the offense and appellant's flight; and as such, we hold that the evidence was admissible to show appellant's consciousness of guilt. *See Bigby*, 892 S.W.3d at 883; *see also Wachholtz*, 296 S.W.3d at 859; *Burks v. State*, 227 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Taking into consideration appellant's concession that he was aware of the police officer's motive to arrest him, we hold that evidence of appellant's flight on seeing the officer wearing the jacket marked 'POLICE' was relevant and admissible to

show, without violating rule 404(b), that appellant was conscious of his guilt."). Therefore, based on the foregoing, we overrule appellant's fifth issue.

## VI.  EVIDENTIARY SUFFICIENCY

In his second issue, appellant contends that the evidence supporting his conviction is insufficient "because the felony offense of deadly conduct does not include an offense where there is bodily injury to another person." Appellant also argues that the evidence is insufficient because the trial court failed to make the State elect between manner and means alleged in separate paragraphs of the indictment, and because "[t]he trailer door was closed, so the State's proof of at or in the direction of individuals with Appellant knowing that Pink[ie] Hardy or David Roberson were inside the habitation is insufficient."

### A.  Standard of Review

"The standard for determining whether the evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)) (emphasis in original); *Brooks v. State*, 323 S.W.3d 893, 898-99 (Tex. Crim. App. 2010) (plurality op.). The factfinder is the exclusive judge of credibility of the witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the factfinder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18,

30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *see Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.    Discussion**

Under section 22.05(b) of the Penal Code, a person commits the offense of deadly conduct by discharge of a firearm "if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." TEX. PENAL CODE ANN. § 22.05(b). Contrary to appellant's assertion, section 22.05(b) does not require the State to prove that the victims were not injured as an element of the offense. *See id.* In fact, most of the cases relied upon by appellant involve a prior iteration of section 22.05, which did not address the offense of deadly conduct by discharging a

Butler v. State                                                                 Page 23

firearm. *See generally Bell v. State*, 693 S.W.2d 434 (Tex. Crim. App. 1985); *Gallegos v. State*, 548 S.W.2d 50 (Tex. Crim. App. 1977); *Scott v. State*, 861 S.W.2d 440 (Tex. App.—Austin 1993, no pet.). In *Benjamin v. State*, the charged offense involved section 22.05(a), which provides that a person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. *See* 69 S.W.3d 705, 707-08 (Tex. App.—Waco 2002, no pet.); *see also* TEX. PENAL CODE ANN. § 22.05(a). Furthermore, in *Benjamin*, this Court stated that section 22.05(a) applies to those acts that fall short of injuring another. 69 S.W.3d at 708. Nothing in the *Benjamin* opinion states that the same is true for section 22.05(b). *See id.* As such, we are not persuaded by appellant's contention that the evidence is insufficient to support his conviction "because the felony offense of deadly conduct does not include an offense where there is bodily injury to another person."

Appellant also argues that the evidence supporting his conviction is insufficient because the trial court did not require the State to elect between alternative manner and means of committing deadly conduct. In particular, appellant contends that the failure to elect resulted in a misjoinder of offenses that rendered the evidence insufficient. However, appellant does not cite any relevant authority explaining how the purported misjoinder of offenses rendered the evidence insufficient. *See* TEX. R. APP. P. 38.1(i).

In any event, based on our reading of the jury charge, we cannot say that the trial court erred in failing to require the State to elect between alternative methods of committing the same offense. The jury charge provided as follows, in relevant part:

Now, if you find from the evidence beyond a reasonable doubt that on or about May 28, 2011 in Brazos County, Texas, the defendant, QUINCY BULTER, did then and there knowingly discharge a firearm at or in the direction of one or more individuals; namely: Pinkie Hardy or David Roberson, *or* that the defendant did then and there knowingly discharge a firearm at or in the direction of a habitation, and the defendant was then and there reckless as to whether the habitation was occupied; to wit: by discharging said firearm at a habitation knowing that Pinkie Hardy or David Roberson were inside of said habitation, then you will find the defendant guilty of the offense of Deadly Conduct as charged in the indictment.

(Emphasis added). As provided in section 22.05(b), the language above provided alternative means for committing deadly conduct. The Court of Criminal Appeals has held that the trial court does not commit error by failing to require the State to elect between alternative methods of committing the same offense. *See Huffman v. State,* 267 S.W.3d 902, 909 (Tex. Crim. App. 2008); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Furthermore, the *Kitchens* Court stated that: "And although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive." 823 S.W.2d at 258. Such is the case here. Therefore, based on the foregoing, we conclude that this contention lacks merit.

And finally, appellant asserts that "[t]he trailer door was closed, so the State's proof of at or in the direction of individuals with Appellant knowing that Pink[ie] Hardy or David Roberson were inside the habitation is insufficient." We disagree that the fact that the trailer door was closed somehow renders the evidence insufficient.

Donita Williams, Pinkie's cousin, testified that she was present at Pinkie's trailer house on the night in question. Williams observed a white Chevrolet Malibu, which was later identified as appellant's car, parked nearby. Williams testified that the door

to the trailer was closed when she heard a gunshot. Williams then heard Pinkie screaming, "My baby, my baby," and saw the shooter get in the Malibu "and just casually drove off like nothing happened."

Pinkie noted that she and Roberson got into an argument at her trailer house the night of the shooting. Appellant was also present at the trailer house. Initially, Pinkie told Roberson to leave, but he refused to do so. Thereafter, appellant came out of a bedroom holding a gun and began arguing with Roberson. At this point, Pinkie asked appellant to leave. Appellant complied, and Pinkie shut the door to the trailer house. Through the peep hole in the door, Pinkie watched appellant make his way towards the white Malibu. Pinkie and Roberson continued their argument until Pinkie heard a gunshot. Pinkie testified that she immediately felt a burning pain and exclaimed, "He shot me in my pussy."

Roberson testified that, on the night in question, he saw a white vehicle parked near Pinkie's trailer house. Roberson also noted that he and Pinkie were arguing on the night in question and that appellant eventually got involved in the argument. While appellant and Roberson yelled insults at one another, Roberson saw a black semi-automatic handgun in appellant's hand. Appellant held the gun at his side. Roberson recalled that Pinkie asked appellant to leave the trailer house and that appellant did so. Once appellant left the trailer house, Roberson closed and locked the door. Then, Roberson and Pinkie resumed their argument; however, shortly thereafter, Roberson heard a gunshot and saw Pinkie fall to her knees with blood "shooting out" from her leg. Roberson picked up Pinkie, kicked open the door, and searched for a vehicle to

transport Pinkie to the hospital. When Roberson opened the door, he saw appellant. Roberson told appellant, "put her in the motherfucking car. You shot her." Appellant stood beside the white Malibu with his hands on the top of the car and with the gun in one hand. Roberson then ran next door. At that time, Roberson recalled hearing tires squeal and seeing appellant drive away.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have determined that: (1) the door to the trailer house was closed at the time appellant fired the gun; (2) appellant, who had been involved in an argument at the trailer house, knowingly discharged a firearm at or in the direction of Pinkie and Roberson; and (3) appellant was reckless as to whether the habitation was occupied when he fired the shot. *See* TEX. PENAL CODE ANN. § 22.05(b); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012). Accordingly, we hold that the record contains sufficient evidence to support appellant's conviction for engaging in deadly conduct by discharging a firearm. *See* TEX. PENAL CODE ANN. § 22.05(b); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 364 S.W.3d at 293-94. We overrule appellant's second issue.

## VII.  CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed January 8, 2015
Do not publish
[CRPM]

